NOT FOR PUBLICATION                              [Docket No. 14]

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE**

JAVAN RANKINES,

      Plaintiff,

   v.                                    Civil No. 14-1842 (RMB/AMD)

NEW JERSEY STATE POLICE               **OPINION**
DETECTIVE TROOPER I DAVID L.
MEYRICK, BADGE #6005
(individually and in his
official capacity); NEW JERSEY
STATE POLICE, et al.,

      Defendants.

APPEARANCES:

Matthew S. Wolf
Matthew S. Wolf, Esquire, LLC
B, 2nd Floor
1236 Brace Road
Cherry Hill, NJ 08034
    *Attorney for Plaintiff*

Robert P. Preuss
Office of the Attorney General
Division of Law
P.O. Box 112
25 Market Street
Trenton, NJ 08625-0112
    *Attorney for Defendants*

**BUMB**, United States District Judge:

    This matter comes before the Court upon the Motion for

Summary Judgment filed by Defendants Trooper David L. Meyrick,

1

Badge #6005, and the New Jersey State Police (collectively the
"Defendants") [Docket No. 14], seeking to dismiss all of
Plaintiff Javan Rankines's claims.  For the reasons set forth
below, the Defendants' Motion for Summary Judgment is GRANTED in
its entirety.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

This lawsuit stems from the arrest of Plaintiff Javan
Rankines ("Rankines") on January 31, 2012 by Trooper David L.
Meyrick ("Meyrick") for various drug-related offenses.  Rankines
was arrested during the execution of a properly authorized "no
knock" search warrant.  Defendants' Statement of Material Facts
("DSOF") ¶¶ 78, 79, 82.  The execution of the search warrant and
the arrest of Rankines were the culmination of an investigation
by Meyrick lasting over a week.

On or about January 22, 2012, Meyrick met with a
confidential informant with whom he was familiar and who had
previously provided him with reliable information.  DSOF ¶¶ 36,
37.  The confidential informant advised Meyrick that there were
individuals selling cocaine and weapons at 1091 Thurman Street,
Camden, New Jersey ("1091 Thurman Street") and that he had
recently purchased cocaine at this address.  DSOF ¶¶ 36, 38.
The confidential informant further identified a man known as "J-
Ran" as one of the individuals selling cocaine out of 1091

2

Thurman Street.  DSOF ¶ 39.  Later that week, Meyrick and the confidential informant drove by 1091 Thurman Street.  DSOF ¶ 40; Exhibit E ¶ 9.  The confidential informant identified the person standing outside the property as J-Ran.  Exhibit D ¶ 9.

Meyrick proceeded to conduct covert surveillance of 1091 Thurman Street.  DSOF ¶ 43.  He observed several men entering and exiting the residence and engaging in brief conversations with each other.  Exhibit D ¶ 10.  According to the tax and utility records reviewed by Meyrick, the property at 1091 Thurman Street was abandoned.  DSOF ¶ 50.  Based on his experience and training as a state trooper, Meyrick believed this, along with the frequent foot traffic at the property, indicated that drugs were being sold from 1091 Thurman Street. DSOF ¶¶ 45, 52.

Meyrick then provided the name J-Ran to the Camden County Prosecutor's Office Intelligence Unit.  DSOF ¶ 46.  The Intelligence Unit identified J-Ran as the Plaintiff, Javan Rankines, and provided Meyrick with a photograph of him.  DSOF ¶¶ 47, 48; Exhibit D ¶ 11.  The confidential informant identified the man in the photograph of Rankines as J-Ran.  DSOF ¶ 48; Exhibit D ¶ 12.

Although he was confident in the reliability of the confidential informant's information, Meyrick proceeded to

confirm the information with his own observations.  He arranged

for the confidential informant to make two controlled purchases

of cocaine from 1091 Thurman Street.  The first took place

during the week of January 22, 2012.  DSOF ¶ 54.  Meyrick

provided the confidential informant with a certain sum of money,

searched him to ensure he did not have other money or contraband

on his person, and instructed him to purchase an "8-ball" of

cocaine at 1091 Thurman Street.  DSOF ¶¶ 55, 56.  The

confidential informant was under Meyrick's constant

surveillance.  DSOF ¶ 57, 63.  Meyrick observed the confidential

informant briefly converse with the Plaintiff outside 1091

Thurman Street.  DSOF ¶ 59.  The Plaintiff admits that he spoke

with the confidential informant outside 1091 Thurman Street at

this time.  Plaintiff's Response ("Pl. Resp.") to DSOF ¶ 59.

The confidential informant entered the residence briefly.[1]

Exhibit D ¶¶ 19-20.  The confidential informant then reunited

with Meyrick at a designated meet location and provided Meyrick

with a substance, later confirmed to be cocaine, which he stated

---

[1] Meyrick claims that both the confidential informant and the
Plaintiff entered the residence.  DSOF ¶ 60.  The Plaintiff,
however, disputes that he has ever been inside 1091 Thurman
Street.  See, e.g., Pl. Resp. to DSOF ¶ 60.  At this stage, the
Court must assume that the Plaintiff's statement is true.  Given
the other undisputed facts regarding Meyrick's investigation and
observations, the Court does not consider this a genuine dispute
of material fact precluding a finding of summary judgment.

he purchased from the Plaintiff while inside 1091 Thurman Street.  DSOF ¶¶ 63-65.

The second controlled purchase took place during the week of January 29, 2012.  In preparation, Meyrick searched the confidential informant and confirmed that he had no money or contraband on his person.  DSOF ¶ 67.  Under Meyrick's constant surveillance, the confidential informant once again spoke briefly with the Plaintiff outside 1091 Thurman Street.  DSOF ¶ 68.  Upon return to the predetermined meet location, the confidential informant gave Meyrick a substance, also later confirmed to contain cocaine, which he indicated he purchased from the Plaintiff.[2]  DSOF ¶ 71, 74.

On January 31, 2012, Meyrick prepared a "no knock" search warrant to search the premises of 1091 Thurman Street, which was approved by Assistant Prosecutor Gary Menchen, and finally reviewed, signed, and authorized by Judge Freeman.  DSOF ¶¶ 77, 78; Exhibit D ¶ 34.  Later that day, members of the Troop 'A' T.E.A.M.S. South, Canine South Unit, Metro South, and the Strategic Investigations Unit executed the "no knock" search warrant at 1091 Thurman Street and recovered 161 jars or baggies

---

[2] While the Plaintiff denies that he sold drugs from 1091 Thurman Street, he does not dispute that the confidential informant told Meyrick that the Plaintiff sold him cocaine during the controlled purchases.  Pl. Resp. to DSOF ¶ 71.

of suspected raw marijuana, ¾ ounce of cocaine, nine decks of
suspected heroin, fifty-nine baggies of suspected crack cocaine,
a 20 gauge shotgun, thirty-two .45 caliber hollow point rounds,
and thirteen separate rounds of ammunition.  DSOF ¶ 79.  The
drugs were found in the exact location inside 1091 Thurman
Street that the confidential informant had told Meyrick they
would be.  DSOF ¶ 81.  The Plaintiff does not dispute this.  Pl.
Resp. to DSOF ¶ 81.

During the execution of the search warrant, the Plaintiff,
who was standing on the street about four doors down from 1091
Thurman Street, was arrested.  DSOF ¶ 82; Plaintiff's Counter-
Statement of Material Facts ("PSOF") ¶ 1.  The Plaintiff was
charged with numerous drug and firearm-related offenses,
including possession with intent to distribute marijuana,
cocaine, and heroin, possession of marijuana, conspiracy to
distribute marijuana, cocaine, and heroin, possession of a
firearm during the commission of a drug-related offense, and
unlawful possession of a weapon.  DSOF ¶ 86; PSOF ¶ 9.  Judge
Burkett set bail on the Plaintiff at $300,000 and Defendant
Meyrick transported the Plaintiff to Camden County Jail.  DSOF ¶
87.

The Plaintiff was never indicted on any charges resulting
from the January 31, 2012 arrest.  PSOF ¶ 20.  He was ultimately

released in October 2012.  Rankines Deposition Tr. 59:10-18

[Docket No. 14-3].  On or about January 10, 2013, the Plaintiff

filed a notice of claim related to this incident.  DSOF ¶ 92;

Exhibit H.

## II.  SUMMARY JUDGMENT STANDARD

Summary judgment shall be granted if "the movant shows that

there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law."  Fed. R.

Civ. P. 56(a).  A fact is "material" if it will "affect the

outcome of the suit under the governing law[.]"  Anderson v.

Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute is

"genuine" if it could lead a "reasonable jury [to] return a

verdict for the nonmoving party."  Id.

When deciding the existence of a genuine dispute of

material fact, a court's role is not to weigh the evidence; all

reasonable "inferences, doubts, and issues of credibility should

be resolved against the moving party."  Meyer v. Riegel Prods.

Corp., 720 F.2d 303, 307 n. 2 (3d Cir. 1983).  However, a mere

"scintilla of evidence," without more, will not give rise to a

genuine dispute for trial.  Anderson, 477 U.S. at 252.  Further,

a court does not have to adopt the version of facts asserted by

the nonmoving party if those facts are "utterly discredited by

the record [so] that no reasonable jury" could believe them.

7

Scott v. Harris, 550 U.S. 373, 380 (2007).  In the face of such evidence, summary judgment is still appropriate "where the record . . . could not lead a rational trier of fact to find for the nonmoving party[.]"  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

The movant "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).  Then, "when a properly supported motion for summary judgment [has been] made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'"  Anderson, 477 U.S. at 250 (citing Fed. R. Civ. P. 56(e)).  The non-movant's burden is rigorous: it "must point to concrete evidence in the record"; mere allegations, conclusions, conjecture, and speculation will not defeat summary judgment. Orsatti v. N.J. State Police, 71 F.3d 480, 484 (3d Cir. 1995); accord Jackson v. Danberg, 594 F.3d 210, 227 (3d Cir. 2010) (citing Acumed LLC v. Advanced Surgical Servs., Inc., 561 F.3d

199, 228 (3d Cir. 2009) ("[S]peculation and conjecture may not defeat summary judgment.")).

III. **ANALYSIS**

Rankines brings claims for civil rights violations under Section 1983 of the Civil Rights Act and the New Jersey Civil Rights Act, as well as a Section 1983 Monell claim. Additionally, Rankines brings claims for false imprisonment, false arrest, malicious prosecution, negligence, and vicarious liability. The Defendants move for summary judgment on all claims. The Defendants also argue that they are entitled to qualified immunity.

> **A. Violation of Section 1983 of the Civil Rights Act and the New Jersey Civil Rights Act (Count 1), False Imprisonment (Count 3), and False Arrest (Count 4)**

The Defendants contend that they are entitled to summary judgment on Rankines's civil rights claims under Section 1983 of the Civil Rights Act and under the New Jersey Civil Rights Act, as well as his false arrest and false imprisonment claims, because Defendant Meyrick had probable cause to arrest the Plaintiff for drug possession and sale. Alternatively, the Defendants maintain that they are entitled qualified immunity. The Plaintiff responds that questions of fact exist regarding the presence of probable cause. Because the Court finds that probable cause existed for the Plaintiff's arrest for possession

9

with intent to distribute controlled dangerous substances, the Plaintiff's claims alleging civil rights violations, false arrest, and false imprisonment are defeated in their entirety. Johnson v. Knorr, 477 F.3d 75, 84-85 (3d Cir. 2007) ("[I]n analyzing false arrest claims, a court to insulate a defendant from liability need only find that probable cause existed as to any offense that could be charged under the circumstances.") (alterations omitted).

### i. Probable Cause

"Probable cause exists where the facts and circumstances within the arresting officer's knowledge are sufficient to warrant a reasonable person to believe an offense had been committed." United States v. McGlory, 968 F.2d 309, 342 (3d Cir. 1992).[3] While the existence of probable cause at the time of arrest is generally a question for the jury, Merkle v. Upper Dublin School Dist., 211 F.3d 782, 788 (3d Cir. 2000), when

---

[3] "This district has repeatedly interpreted [the New Jersey Civil Right Act] analogously to § 1983." Pettit v. New Jersey, Civ. A. No. 09-3735 (NLH/JS), 2011 WL 1325614, at *3 (D.N.J. Mar. 30, 2011) (collecting cases).  Likewise, the standard for probable cause is identical under federal and New Jersey law.  Maples v. Atlantic City, Civ. A. No. 06-2200 (RMB/AMD), 2008 WL 2446825, at *6 (D.N.J. June 16, 2008); New Jersey v. Basil, 202 N.J. 570, 585-86 (2010) (reciting standard for probable cause to arrest under New Jersey law and citing to federal law as the basis for that standard).  For these reasons, the Plaintiff's federal and state law claims are considered together.

there are no material, disputed facts, the Court may resolve the
issue as a matter of law.  Id. at 788-89.  In determining
whether probable cause existed at the time of an arrest, the
"arresting officer's state of mind" and the charges "actually
invoked by the arresting officer" are irrelevant.  Devenpeck v.
Alford, 543 U.S. 146, 153 (2004); Jaegly v. Couch, 439 F.3d 149,
154 (2d Cir. 2006).  Courts must instead objectively assess
whether, at the time of the arrest and based upon the facts
known to the officer, probable case existed "as to any offense
that could be charged under the circumstances."  Wright v.
Philadelphia, 409 F.3d 595, 602 (3d Cir. 2005); Barna v. Perth
Amboy, 42 F.3d 809, 819 (3d Cir. 1994).  Courts must determine
"whether, at the moment the arrest was made, . . . the facts and
circumstances within [the officer's] knowledge and of which they
had reasonably trustworthy information were sufficient to
warrant a prudent man in believing that the petitioner had
committed or was committing an offense."  Beck v. Ohio, 379 U.S.
89, 91 (1964).

     Probable cause may exist "even in the absence of the actual
observance of criminal conduct when a prudent observant would
reasonably infer that a defendant acted illegally."  United
States v. Burton, 288 F.3d 91, 97 (3d Cir. 2002) (citing
Illinois v. Gates, 462 U.S. 213, 243 n. 13 (1983) ("probable

cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity.")). Additionally, "[t]he validity of the arrest does not depend on whether the suspect actually committed a crime; the mere fact that the suspect is later acquitted of the offense for which he is arrested is irrelevant to the validity of the arrest." Michigan v. DeFillippo, 443 U.S. 31, 35 (1979).  "[T]he kinds and degree of proof and the procedural requirements necessary for a conviction are not prerequisites to a valid arrest."  Id.

The Defendants argue that the record, even when viewed in the light most favorable to the Plaintiff, establishes that Meyrick had probable cause to arrest Rankines, because the facts viewed as a whole would lead a reasonable person to believe Rankines was selling drugs in or around 1091 Thurman Street. The only attack the Plaintiff makes is one of his innocence.  He repeatedly disputes ever entering 1091 Thurman Street.  That, however, misses the point.  Even assuming that to be true, which the Court must at this stage, Defendant Meyrick had sufficient probable cause to arrest the Plaintiff based on the information from the confidential informant, the two controlled purchases of cocaine, his general observations of 1091 Thurman Street, including the Plaintiff's own undisputed presence outside the

residence, and the illegal drugs recovered from 1091 Thurman Street after the execution of the search warrant.

The Plaintiff also relies heavily on the fact that he was never convicted of any of the crimes charged in relation to the January 31, 2012 arrest.  As already explained, however, this fact is immaterial to the determination of whether Meyrick had probable cause to arrest Rankines.  DeFillippo, 443 U.S. at 35. Likewise, the Plaintiff's protestations that Meyrick never personally and directly observed him engaging in criminal conduct are unavailing.  Burton, 288 F.3d at 97 (probable cause may exist "even in the absence of the actual observance of criminal conduct . . . .").

Under the undisputed facts as established, it was reasonable to believe that Plaintiff Rankines was selling illegal drugs in or around 1091 Thurman Street.  First, Defendant Meyrick relied upon the information of a confidential informant with whom he was familiar and who he believed to be reliable based on information provided in prior investigations. The confidential informant told Meyrick that he had previously purchased cocaine from 1091 Thurman Street from an individual, later identified as the Plaintiff, who he knew as "J-Ran."  The Plaintiff does not attack the credibility of the confidential informant.  The Plaintiff could have, for example, taken

13

discovery on that issue to challenge the confidential
informant's credibility or Meyrick's prior experiences with the
confidential informant.  Apparently, however, he did not.

Information obtained from confidential informants,
especially when confirmed, as here, by independent police
investigation, often supports a finding of probable cause.  See,
e.g., Napier v. City of New Castle, 407 F. App'x 578, 583 (3d
Cir. 2010) (finding that probable cause for arrest existed where
"[a]t the time of the arrest, [defendant] knew that [plaintiff]
had been identified by the CI, that he had witnessed a woman
selling drugs who looked like [plaintiff's] driver's license
photograph, that [plaintiff] resembled the woman he had seen
selling drugs—albeit with a different hairstyle and weight—and
that it had been three and one-half months since he observed the
woman selling drugs."); O'Connor v. City of Philadelphia, 233 F.
App'x 161, 164-65 (3d Cir. 2007) ("An informant's 'veracity,'
'reliability' and 'basis of knowledge' are all highly relevant
in determining the value of his report.  An informant who
relates his or her information to a law enforcement officer
during an in-person meeting is more reliable than an anonymous
caller.  The corroboration of an informant's tip by independent
police work enhances the value of an informer's tip.  In making
a warrantless arrest an officer may rely upon information

14

received through an informant, rather than upon his direct
observations, so long as the informant's statement is reasonably
corroborated by other matters within the officer's knowledge.")
(internal citations, quotations, and alterations omitted).

Second, Meyrick personally observed several men going in
and out of 1091 Thurman Street, a property he knew to be
abandoned. Based on his training and experience as a state
trooper, Meyrick found this to be consistent with a location
used to sell illegal drugs. Among the men he saw in the
vicinity of 1091 Thurman Street was the Plaintiff. The
Plaintiff does not deny being in the vicinity of 1091 Thurman
Street during the relevant time period.

Third, Meyrick further observed the confidential informant
and Rankines speaking outside 1091 Thurman Street during the
controlled purchases of illegal drugs. The Plaintiff does not
deny that he spoke to the confidential informant outside 1091
Thurman Street. During the two controlled purchases, Meyrick
did not observe the confidential informant interacting with
anyone except the Plaintiff. Meyrick searched the confidential
informant to ensure that he did not have any contraband on his
person prior to the controlled purchase. After each of the
controlled purchases, the confidential informant returned to

15

Meyrick and turned over cocaine he stated he purchased from the Plaintiff at 1091 Thurman Street.

Finally, law enforcement recovered large quantities of illegal drugs, including marijuana, cocaine, and heroin, after the execution of the search warrant at 1091 Thurman Street. Rankines does not challenge the search of the residence.  The contraband recovered from the residence confirmed the confidential informant's information regarding the sale of drugs at that address.

The Court agrees with the Defendants that these facts, viewed in their totality, would plainly lead a reasonable person to believe that Plaintiff Rankines was engaging in criminal activity and, thus, support a finding of probable cause.  For these reasons, summary judgment as to Counts 1, 3, and 4 is granted in the Defendants' favor.

### ii. Qualified Immunity

The Defendants argue, in the alternative, that they are entitled to qualified immunity.  Even if the Defendants had violated the Plaintiff's constitutional rights, which the Court has already found they did not, qualified immunity would shield the Defendants from liability.

Qualified immunity "protects government officials from liability for civil damages insofar as their conduct does not

16

violate clearly established statutory or constitutional rights of which a reasonable person would have known." <u>Pearson v. Callahan</u>, 555 U.S. 223, 231 (2009); <u>accord</u> <u>Plumhoff v. Rickard</u>, 134 S. Ct. 2012, 2023 (2014) ("An official sued under § 1983 is entitled to qualified immunity unless it is shown that the official violated a statutory or constitutional right that was 'clearly established' at the time of the challenged conduct.").

The question of whether Defendant Meyrick is entitled to qualified immunity requires this Court to answer two questions: "(1) whether the officer violated a constitutional right," and "(2) whether the right was clearly established, such that it would have been clear to a reasonable officer that his conduct was unlawful in the situation he confronted." <u>Saucier v. Katz</u>, 533 U.S. 194, 201-02 (2001).  The questions may be addressed in either order.  <u>Pearson</u>, 555 at 242.  Where the underlying facts are undisputed, the doctrine's applicability is a question of law.  <u>Curley v. Klem</u>, 499 F.3d 199, 210 (3d Cir. 2007).

In determining whether Meyrick's actions violated a "clearly established right," the "inquiry 'must be undertaken in light of the specific context of the case, not as a broad general proposition.'" <u>Brosseau v. Haugen</u>, 543 U.S. 194, 198 (2004) (citing <u>Saucier</u>, 533 at 206).  While arrest without probable cause is certainly a clearly established constitutional

17

violation, that is not enough.  See id.  The Court agrees with the Defendants that it is not clearly established that an officer in Meyrick's position would not have probable cause to arrest Rankines.

Probable cause need not be supported by "the kinds and degree of proof and the procedural requirements necessary for a conviction." DeFillippo, 443 U.S. at 35.  All that is required is that "the facts and circumstances within the arresting officer's knowledge are sufficient to warrant a reasonable person to believe an offense had been committed." McGlory, 968 F.2d at 342.  Here, as the Court has already detailed, the "facts and circumstances within [Meyrick's] knowledge" supporting his belief that Rankines was engaging in criminal activity are overwhelming.  A known and reliable confidential informant had informed Meyrick that the Plaintiff sold drugs out of 1091 Thurman Street.  Meyrick himself saw Rankines outside 1091 Thurman Street talking to the confidential informant during two controlled purchases of cocaine.  The confidential informant told Meyrick that the cocaine procured during the two controlled purchases was bought from Rankines.  After obtaining a search warrant to search 1091 Thurman Street and searching the premises, large quantities of illegal drugs were found.  The Plaintiff disputes none of this.

18

Given the ample case law establishing that probable cause exists where an officer has information from a credible and reliable informant, as well as corroboration of that information by independent police work, the Court holds that it is not clearly established that no probable cause would exist for an officer in Meyrick's position to arrest an individual for drug possession and sale. See, e.g., Napier, 407 F. App'x at 583; O'Connor, 233 F. App'x at 164-65; see also United States v. Stearn, 597 F.3d 540, 556 (3d Cir. 2010) ("As in Gates, the magistrate judge in this case had a 'substantial basis for crediting the [informant's] hearsay' tip because the tip was corroborated in significant part by independent police investigation. . . . Crucially, officers corroborated [the arrestee's] drug involvement when they observed the confidential informant consummate a controlled buy of 3.5 grams of cocaine from [him] at the intersection of Higbee and Cottage.") (quoting Gates, 462 U.S. at 244-45); United States v. Warren, 42 F.3d 647, 652 (D.C. Cir. 1994) ("Our cases consistently have recognized that police establish probable cause for a search where they corroborate a reliable informant's tip about drug activity at a residence by conducting a single controlled buy of

illegal narcotics.") (collecting cases).[4]  Therefore, even if
there had been no probable cause to arrest the Plaintiff, which
this Court finds there was, Defendant Meyrick would be entitled
to qualified immunity.

### B. Section 1983 <u>Monell</u> Claim (Count 2)

The Plaintiff also argues that the New Jersey State Police
should be held liable because it was aware of, condoned,
encouraged, and failed to deter or to stop a pattern of
allegedly unlawful acts of Defendant Meyrick and any other state
troopers involved in the Plaintiff's arrest.  The Plaintiff
further alleges that the New Jersey State Police failed to
properly supervise, discipline, and train its officers as a
matter of policy and pattern.  <u>See</u> <u>Monell v. Dept. of Soc.
Servs.</u>, 436 U.S. 658 (1978).

This claim fails for two reasons.  First, because this
Court has already found that there was probable cause to arrest
the Plaintiff and, therefore, that there was no constitutional
violation for which Defendant Meyrick or any officers could be
held liable under Section 1983 or the New Jersey Civil Rights
Act, the New Jersey Police Department cannot be held vicariously

---

[4] These cases, relied upon by the Defendants for the proposition
that confidential informants may be used to support a finding of
probable cause, are criminal cases.  The Court observes that,
while these cases are useful, they are not dispositive.

liable.  Napier, 407 F. App'x at 584 (citing Williams v. Borough of W. Chester, Pa., 891 F.2d 458, 467 (3d Cir. 1989)).

Second, as the Defendants correctly note, a police department is not a separate legal entity that can be sued. "[A] police department is not a 'person' subject to suit under 42 U.S.C. § 1983 pursuant to Monell v. Dept. of Social Services of City of New York, 436 U.S. 658, 688-90 (1978)." Hannah v. Bridgewater Police Dep't, 2014 WL 4272759, at *2 (D.N.J. Aug. 28, 2014); accord Will v. Michigan Dep't of State Police, 491 U.S. 58, 64 (1989).

For these reasons, summary judgment as to Count 2 is likewise granted in favor of the Defendants.

### C. Malicious Prosecution (Count 5)

The Defendants also contend that they are entitled to summary judgment on the Plaintiff's malicious prosecution claim. "To prevail on a Section 1983 claim for malicious prosecution, a plaintiff must demonstrate that: (1) the defendant initiated a criminal proceeding; (2) the criminal proceeding ended in plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding."

Stetser v. Jinks, Civ. A. No. 10-3094 (RMB/JS), 2013 WL 3791613, at *2 (D.N.J. July 19, 2013), aff'd 572 F. App'x 85 (3d Cir. June 5, 2014).[5]  When claims of malicious prosecution are brought against an arresting officer, it must also be shown that the chain of causation was not broken by the "intervening exercise of independent judgment" by a judge or prosecutor.  Freeman v. State, 347 N.J. Super. 11, 25 (App. Div. 2002).

The Defendants argue that the charges against the Plaintiff were initiated with probable cause and that the record is devoid of any evidence that the Defendants acted with malice or any other improper motive.  The Plaintiff counters that Defendant Meyrick lacked probable cause to arrest and charge him, but does respond to the Defendants' contention that there is no evidence of malice or improper motive.  The Court agrees with the Defendants and, for the following reasons, grants summary judgment in favor of the Defendants on the Plaintiff's malicious prosecution claim (Count 5).

---

[5] To establish a malicious prosecution claim under New Jersey state law, a plaintiff must establish that (1) the criminal action was instituted by the defendant against the plaintiff, (2) that it was actuated by malice, (3) that there was an absence of probable cause for the proceeding, and (4) that it was terminated favorably to the plaintiff.  Stolinski v. Pennypacker, 772 F. Supp. 2d 626, 636-37 (D.N.J. 2011).  As the elements are materially identical, the Court will discuss the state and federal claims together.

"Lack of probable cause is the <u>sine qua non</u> of malicious prosecution." <u>Trabal v. Wells Fargo Armored Service Corp.</u>, 269 F.3d 243, 249 (3d Cir. 2001).  As this Court has already concluded, there was probable cause for the Plaintiff's arrest and for the drug-related charges brought against him.  Defendant Meyrick arrested and charged the Plaintiff after consulting with a reliable confidential informant with whom he had worked before, observing two controlled purchases of controlled substances, and executing a valid search of 1091 Thurman Street pursuant to a warrant and recovering large quantities of illegal controlled substances, a firearm, and ammunition.  The Plaintiff was standing on the street near the premises while the search warrant was executed.  These facts, considered together, support a finding of probable cause.

Additionally, the Court finds that, as the Defendants contend, there is no evidence in the record to support a finding of malice or other improper motive.  In fact, the Plaintiff does not dispute this in his opposition brief.  "Malice can be inferred from want of probable cause, provided the plaintiff produces at least some extrinsic evidence of that malice." <u>Prince v. Aiellos</u>, 594 F. App'x 742, 746 (3d Cir. 2014) (internal citations, quotations, and alterations omitted).  In the context of malicious prosecution, "malice can mean ill-will

23

*or* the use of a prosecution for an extraneous purpose *or* a lack of belief in the guilt of the accused." <u>Lippay v. Christos</u>, 996 F.2d 1490, 1503 (3d Cir. 1993) (emphasis in original).  First, probable cause existed for the Plaintiff's arrest and charges. Second, the Plaintiff produced no evidence that the Defendants acted with malice or for any purpose other than bringing the Plaintiff to justice.

For these reasons, the Court grants summary judgment in favor of the Defendants on the malicious prosecution claim.

### D. Negligence (Count 6)

Plaintiff Rankines further alleges that Defendant New Jersey State Police was negligent in its hiring, training, and supervision of the officers, including Defendant Meyrick, involved in his arrest.  The Defendants seek summary judgment on this claim, arguing that there is no evidence in the record that even suggests that Defendant Meyrick or any other officers had any propensities to act in an illegal manner, let alone that the New Jersey State Police had notice of such propensities.

A claim for negligent hiring or retention requires two showings.  The first is evidence of the employer's knowledge and foreseeability of harm to third persons.  <u>Gilbert v. Camden City</u>, Civ. A. No. 04-3268 (RMB/AMD), 2007 WL 1040978, at *5 (D.N.J. Apr. 4, 2007) (citing <u>DiCosala v. Kay</u>, 91 N.J. 159, 173

(1982)).  "An employer will only be held responsible for the torts of its employees beyond the scope of the employment where it knew or had reason to know of the particular unfitness, incompetence or dangerous attributes of the employee and could reasonably have foreseen that such qualities created a risk of harm to other persons."  DiCosala, 91 N.J. at 173.  "The second required showing is that, through the negligence of the employer in hiring the employee, the latter's incompetence, unfitness or dangerous characteristics proximately caused the injury."  Id. at 174.

A negligent supervision claim requires similar showings.  A plaintiff must establish that the employer knew or had reason to know that its employees "exhibited dangerous characteristics." Cordial v. Atl. City, Civ. A. No. 11-1457 (RMB/AMD), 2014 WL 1095584, at *11 (D.N.J. Mar. 19, 2014).  Harm to others must be reasonably foreseeable and the negligent supervision must be the proximate cause of the plaintiff's injury.  Id.

There is no evidence in the record that Defendant Meyrick or any other state troopers involved in the Plaintiff's arrest are unfit, incompetent, or dangerous.  In fact, the evidence suggests the opposite.  Defendant Meyrick thoroughly investigated the Plaintiff and the occurrences at 1091 Thurman Street prior to obtaining a valid search warrant for the

25

premises and arresting the Plaintiff.   Furthermore, there is no
evidence whatsoever in the record that the New Jersey State
Police knew of any propensities of Defendant Meyrick to act in
an illegal, dangerous, or otherwise improper manner.   Likewise,
there is no evidence that any negligence on the part of the New
Jersey State Police was the proximate cause of Rankines's
alleged injury.

In sum, the Plaintiff has not produced evidence to support
a single element of negligent hiring, retention, or supervision.
Accordingly, summary judgment is granted in favor of the
Defendants on the Plaintiff's negligence claim.

### E. Vicarious Liability (Count 7)

According to the Defendants, Count 7 of the Plaintiff's
Complaint, which sets forth a claim for vicarious liability,
must be dismissed to the extent that Counts 1 through 6 are
dismissed because a vicarious liability claim "depends for its
viability on the establishment of the underlying torts upon
which it is based."   Defs. Summary Judgment Br. at 27 [Docket
No. 16].   "[I]n the absence of an underlying tort by an employee
there can be no vicarious liability on the part of the
employer."   Ricketti v. Barry, Civ. A. No. 13-6804 (AET/DEA),
2015 WL 2376013, at *4 (D.N.J. May 18, 2015) (citing Carter v.
Reynolds, 175 N.J. 402, 409 (2003)); accord Moriarty v. Classic

<u>Auto Grp., Inc.</u>, Civ. A. No. 13-5222 (JBS/AMD), 2014 WL 884761, at *6 (D.N.J. Mar. 6, 2014).  Likewise, where there is no underlying constitutional violation by an employee, there can be no vicarious liability on the part of the employer.  <u>Napier</u>, 407 F. App'x at 584; <u>Grazier ex rel. White v. City of Philadelphia</u>, 328 F.3d 120, 124 (3d Cir. 2003).

     As the Court has already dismissed Counts 1 through 6 of the Plaintiff's Complaint for the reasons set forth above, there are no underlying claims capable of supporting a vicarious liability claim against the New Jersey State Police. Accordingly, the Court also grants summary judgment in favor of the Defendants on the Plaintiff's vicarious liability claim.

### F. Notice of Claim Requirement

     The Defendants urge the Court, in the alternative, to grant summary judgment in their favor on Counts 3 through 7 because the Plaintiff failed to file a notice of claim within 90 days of the accrual of his claims as required by the New Jersey Tort Claims Act ("NJTCA").  Under the NJTCA, a plaintiff bringing a claim against a public entity or public employee must give the relevant public entity notice of the claim within ninety days after the cause of action accrues.  N.J.S.A. § 59:8-8.  A plaintiff who fails to comply with this requirement "shall be

forever barred from recovering against a public entity or public
employee." Id.

   The Plaintiff concedes that he filed his only notice of
claim on January 10, 2013, nearly a year after his arrest by
Defendant Meyrick.  DSOF ¶ 92; Pl. Resp. to DSOF ¶ 92.  The
Plaintiff's only response to the Defendants' argument is that
the NJTCA "does not bar the fee shifting civil right claims in
the Complaint."  Pl. Opp. Br. at 10 [Docket No. 20].  The
Defendants, however, do not move for summary judgment on the
constitutional claims on this ground.  Characterizing this
action as a "civil rights action" does not permit the Plaintiff
to bypass the notice requirements applicable to his state law
claims.  See Rolax v. Whitman, 53 F. App'x 635, 637 (3d Cir.
2002) ("When an action in tort is initiated against a public
entity or its employees, the complaint must also meet the
requirements of the New Jersey Tort Claims Act"); Baklayan v.
Ortiz, Civ. A. No. 11-3943 (CCC/MF), 2012 WL 3560384, at *5
(D.N.J. Aug. 15, 2012) ("All common law tort claims, including
both negligence and intentional claims, are subjected to this
notice requirement.").

   "False arrest and false imprisonment claims accrue at the
time of the detention."  Hyatt v. Cty. of Passaic, 340 F. App'x
833, 838 (3d Cir. 2009).  Rankines's false arrest and false

imprisonment claims accrued on the day of his arrest and detention, January 31, 2012. His notice of claim is, therefore, untimely and Counts 3 and 4 are barred under the NJTCA. Likewise, the Plaintiff's negligence claim, Count 6, is also barred by the NJTCA, insofar as it relates his arrest and detention. Additionally, the vicarious liability claim, Count 7, fails to the extent it is dependent upon these claims. The Plaintiff's failure to comply with the notice requirements as to Counts 3, 4, 6, and 7 provides an additional basis for granting summary judgment in favor of the Defendants on these claims.

A malicious prosecution claim, however, does not accrue until there is a favorable termination of the criminal proceedings. Otherwise, "a requisite element of the cause of action would not have been present." Shontz v. Cumberland Cty., 2008 WL 2329928, at *4 (N.J. Super. Ct. App. Div. June 9, 2008); accord Torres v. McLaughlin, 163 F.3d 169, 176 (3d Cir. 1998); Castillo-Perez v. City of Elizabeth, Civ. A. No. 11-6958 (KM/CL), 2014 WL 1614845, at *11 (D.N.J. Apr. 21, 2014). Therefore, Rankines's malicious prosecution claim accrued on the date the charges against him were dismissed, which he alleges occurred on October 15, 2012. PSOF ¶ 18. Assuming this to be true, the Plaintiff's notice of claim regarding his malicious prosecution tort claim was timely.

While the notice of claim requirement does not bar this claim, the Court holds that the Defendants are nonetheless entitled to summary judgment on the malicious prosecution claim for the separate reasons outlined above.  To reiterate, the undisputed evidence establishes that probable cause existed for Rankines's arrest and the institution of criminal proceedings against him.  Furthermore, there is no evidence in the record that the Defendants acted with malice or for any purpose other than bringing the Plaintiff to justice.

**IV.  CONCLUSION**

For the foregoing reasons, the Defendants' Motion for Summary Judgment is GRANTED in its entirety.

s/Renée Marie Bumb
RENÉE MARIE BUMB
UNITED STATES DISTRICT JUDGE

DATED:  February 10, 2016